# 2003 DTA 72

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE SAN JUAN
### PANEL II

PREPARADOS ALIMENTICIOS, S.A.
Recurrida

v.

MENDARA INTERNATIONAL, INC.
Recurrente

Núm. KLRA-2002-00907

San Juan, Puerto Rico, a 11 de abril de 2003

Panel compuesto por su Presidenta, Juez Rodríguez de Oronoz,
la Juez Peñagarícano Soler y la Juez Bajandas Vélez

Peñagarícano Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Mendara International, Inc. (en adelante, Mendara), mediante auto de Revisión presentado el 9 de diciembre de 2002. Solicita revisemos la Resolución emitida por el Departamento de Estado de Puerto Rico (en adelante, Departamento), sobre la Solicitud de Registro Núm. 51,289, la cual fue notificada el 8 de octubre de 2002. En la misma, el Departamento declaró Ha lugar la Solicitud de Cancelación presentada por Preparados Alimenticios S.A. (en adelante, Preparados Alimenticios).

Examinados en su totalidad los autos del caso, así como el derecho aplicable, resolvemos expedir el auto de Revisión solicitado y confirmar la Resolución recurrida.

### I

El 23 de febrero de 1979, se inscribió la marca *"Gallina Blanca"* en el Registro de Marcas de Puerto Rico. La misma había sido utilizada en el mercado desde el año 1977. El 17 de noviembre de 2002, Mendara presentó ante el Registro de Marcas del Departamento una Solicitud de Registro para la marca *"Doña Gallina y Diseño"*. Ello, a tenor con la clase internacional 29. El 5 de febrero de 2002, Preparados Alimenticios instó ante el Departamento una *Solicitud de Cancelación y/o Oposición*. Esgrimió que la marca presentada para el registro por Mendara creaba un conflicto con las marcas registradas a su favor bajo *"Gallina Blanca"*. El 8 de octubre de 2002, el Departamento, mediante Resolución, declaró Ha lugar la Solicitud de Cancelación incoada por Preparados Alimenticios.

Así las cosas, el 28 de octubre de 2002, Mendara instó una solicitud en Reconsideración. El 8 de noviembre de 2002, la misma se declaró Sin Lugar. No estando conforme con lo anterior, el 9 de diciembre de 2002 Mendara presentó el presente recurso de Revisión. Mediante el mismo, expuso los siguientes señalamientos de errores:

*"1. Incurrió en error el Honorable Departamento de Estado al haber resuelto que la marca "Doña Gallina" no es susceptible de ser inscrita debido a la existencia en el Registro de la marca "Gallina Blanca."*

*2. Incurrió en error el Honorable Departamento de Estado al reconocerle a la Recurrida el uso exclusivo del nombre "Gallina" para describir productos cuando dicho nombre es genérico para la venta de gallinas o productos derivados de o relacionados a la gallina.*

*3. Incurrió en error el Honorable Departamento de Estado al concluir que existe una gran similitud entre las marcas "Doña Gallina" y "Gallina Blanca"."*

El 13 de diciembre de 2002, Preparados Alimenticios presentó una Solicitud de Desestimación. El 27 de diciembre de 2002, emitimos Resolución por la cual le concedimos treinta (30) días a la recurrida, Preparados Alimenticios, para atender los méritos del recurso incoado. El 2 de enero de 2003, Mendara presentó una Oposición a la Solicitud de Desestimación que presentara la parte recurrida. ██ Por su parte, el 10 de febrero del año en curso, Preparados Alimenticios presentó su Oposición a la Solicitud de Revisión de autos.

## II

Como cuestión de umbral, hemos de disponer de las cuestiones jurisdiccionales señaladas por Preparados Alimenticios en su escrito de desestimación, en torno a este recurso. En su *Solicitud de Desestimación*, presentada el 13 de diciembre de 2002, la recurrida solicita que se desestime el mismo por incumplimiento a la Regla 59 (3) de nuestro Reglamento, 4 L.P.R.A. Ap. XXII A.

En suma, Preparados Alimenticios arguye que la recurrente no incluyó el índice del Apéndice de autos, por lo que corresponde desestimar el presente recurso de revisión. La Regla 59 del Reglamento del Tribunal de Circuito de Apelaciones expone en su acápite (3):

*"(3) Todas las páginas del apéndice se numerarán consecutivamente. Los documentos se organizarán en orden cronológico. Además, el apéndice contendrá un índice que indicará la página en que aparece cada documento."* 4 L.P.R.A. Ap. XXII A.

Luego de analizar los apéndices, encontramos que en algunas de las copias del escrito de revisión, falta el aludido índice de Apéndice. No empece, el referido incumplimiento con el Reglamento de este Tribunal, el mismo no es de tal magnitud que amerite desestimar el presente recurso apelativo, pues, *"...el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso." Román Velásquez v. Román Hernández,* **2002 JTS 132,** a la pág. 255; *M & R Developers v. Banco Gubernamental de Fomento,* **2001 JTS 37** (Opinión de Conformidad del Juez Asociado Sr. Fuster Berlingeri, a la cual se une la Juez Asociada Sra. Naveira de Rodón). Por motivo de que el documento omitido no es indispensable para la resolución de esta acción, nos declaramos con jurisdicción para atender el mismo. *Román Velázquez v. Román Hernández, supra; M & R Developers v. Banco Gubernamental de Fomento, supra.*

## III

*"Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de manera arbitraria, ilegal o tan irrazonable que sus actuaciones constituyeron un abuso de discreción." Municipio de San Juan v. J.C.A. y otros,* **99 JTS 152,** citando a *Fuertes v. A.R.P.E.,* 134 D.P.R. 947 (1993). ██ Para que el tribunal revisor se encuentre en posición de analizar la determinación tomada por el organismo administrativo, es imprescindible que las agencias acojan determinaciones de hechos y de derecho. ██

El Tribunal Supremo de Puerto Rico ha manifestado en reiteradas ocasiones que las determinaciones de hechos adoptadas por la agencia serán sostenidas por los tribunales de estar éstas basadas en evidencia sustancial. Se considera a la evidencia sustancial como aquella evidencia que *"una mente razonable pueda aceptar como adecuada para sostener una* conclusión". *Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp.,* **2002 JTS 21**, a la pág. 561; *Ramírez v. Departamento de Salud,* **99 JTS 47**; *Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., supra.*

Para una parte convencer al tribunal de que la decisión en controversia no se sostiene en evidencia sustancial, es necesario que la misma demuestre que existe otra prueba en récord que razonablemente menoscabe el peso de tal evidencia, en vista de la prueba presentada y hasta el punto que establezca que la decisión tomada por el organismo administrativo no está justificada en una evaluación justa de la prueba ante su consideración.

Predicado en ello, los tribunales están compelidos a no intervenir con las determinaciones de hechos tomadas por la agencia administrativa de hallarse fundamentadas en prueba que surge del récord administrativo. *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, supra; Costa Wood, et al. v. Caguas Expressway Motors, Inc.,* **2000 JTS 11**; *Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp., supra; T-JAC, Inc. v. Caguas Centrum, supra; Misión Industrial de P.R. v. J.P. y A.A.A.,* 143 D.P.R. 804 (1997); *Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R.,* 144 D.P.R. 425 (1997).

La intención legislativa ha sido de revestir a las determinaciones realizadas por las agencias, con un velo de corrección y legitimidad. Por ello, es ampliamente conocido que las actuaciones de las agencias administrativas gozan de la más dilatada deferencia. No obstante, la deferencia no ha de ser óbice para la revisión en aquellos casos donde la misma menoscabe derechos de índole fundamental o sea irrazonable. ■ *Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra; Reinaldo Castillo Camacho v. Dpto. del Trabajo,* **2000 JTS 154**; *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1975); *Quevedo Segarra v. J.A.C.L.,* 102 D.P.R. 87 (1974); *Rodríguez v. Comisión Industrial,* 99 D.P.R. 368 (1970); *Román v. Superintendente de la Policía,* 93 D.P.R. 685 (1966).

Acorde a lo anterior, la parte que objete las determinaciones de hechos emitidas por una agencia administrativa deberá acreditar que el organismo actuó de manera arbitraria, caprichosa o en patente menoscabo a derechos fundamentales. *Maisonet v. Fondo del Seguro del Estado,* 142 D.P.R. 194 (1996); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987). En adición, le corresponde a la parte inconforme con las referidas determinaciones, probar la existencia en el expediente de prueba adicional que disminuya o desacredite el valor probatorio de la evidencia impugnada. La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. *Ramírez v. Departamento de Salud, supra; Chase Manhattan Bank v. Emmanuelli Bauzá,* 111 D.P. R. 708 (1981).

El criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. Así pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. No obstante, la deferencia reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R., supra; Rodríguez v. Comisión Industrial;* 99 D.P.R. 368 (1970).

## IV

*"...Trademarks exists primarily to protect the reputation of a producer of goods or provider of services. In doing so, they provide businesses with an incentive to maintain, upgrade, and develop new goods and services. Enforcing trademark rights protects the owner's investment in advertising and other forms of goods and service differentiation."* Simensky, Bryer, *The New Role of Intellectual Property in Commercial Transactions,* John

Wiley & Sons, Inc., [© 1994], pág. 6.

La Ley de Marcas del Estado Libre Asociado de Puerto Rico, Ley Núm. 63 de 14 de agosto de 1991, 10 L.P. R.A. § 171, *et seq.*, fija el marco jurídico para la protección de marcas en nuestra jurisdicción. La Ley de Marcas, *supra*, establece en su sección 171, inciso (a), que: *"[e]l derecho de propiedad sobre la marca se adquiere por el registro válidamente efectuado de conformidad con las disposiciones de las secs. 171 et seq. de este título."* Uno de los objetivos del registro de marcas es evitar la confusión entre los consumidores acerca del origen de los productos. *Colgate-Palmolive v. Mistolín*, 117 DPR 313 (1986). Por ello, La Ley de Marcas, *supra*, dispone que *"...el usuario anterior de una marca podrá reclamar al Secretario la cancelación de una marca registrada que pueda crear confusión con la suya, siempre que ejercite la reclamación antes de que transcurran cinco (5) años desde el registro de la marca."* 10 L.P.R.A. sec. 171(b).

Por su parte, se ha establecido en el Artículo 5 de la Ley de marcas, *supra*, que:

*"(a) No se registrará ninguna marca que consista en:*

*(1)....*

*(2)....*

*(3)....*

*(4)....*

*(5)....*

*(6)....*

*(7) Una marca que sea idéntica a otra marca ya inscrita o conocida, que pertenezca a otro y que se use en productos o servicios de las mismas propiedades descriptivas o que tanto se asemeje a la marca perteneciente a otro, que sea muy probable que ocasione confusión o equivocación en la mente del público o de lugar a engaño de los compradores.*

*(8) Una marca que sea idéntica o similar a un nombre comercial inscrito o solicitado su registro en el Departamento de Estado, que sea muy probable que ocasiones confusión o equivocación en la mente del público."*

Asimismo, se ha establecido que cualquier persona que entienda que ha de resultar perjudicada por el registro de una marca en particular, puede oponerse a la misma. Así pues, deberá presentar ante el Secretario de Estado (en adelante, Secretario) un escrito exponiendo los fundamentos de oposición. En ese caso, los fundamentos allí contenidos serán suficientes para que, de así ameritarlo, se rechace una petición de registro. Ley de Marcas, *supra*, sec. 171(f). Además, el titular registral de una marca comercial puede excluir el uso posterior de dicha marca comercial cuando una persona, sin el consentimiento previo, la utilice o la intente utilizar con relación a su negocio. En este caso, el titular registral podrá llevar una acción de interdicto, una acción de daños u orden de incautación contra la referida persona. Será elección del titular registral el llevar cualquiera de las acciones antes mencionadas. Ley de Marcas, *supra*, sec. 171(w).

En tanto, el Tribunal Supremo de Puerto Rico ha expresado que, *"[u]na persona o corporación tiene un derecho propietario sobre una 'marca de fábrica o de servicio' cuando dicha marca es usada en conexión con su producto o servicio para indicar su origen y distinguirlo de otros....El derecho propietario de una marca es*

*obtenido por su uso y no por su inscripción...."* (citas omitidas). *Posadas de P.R. v. Sands Hotel,* 131 DPR 21 (1992), a la pág. 35. El derecho propietario permitiendo el uso exclusivo de una marca, corresponde a aquél que haya utilizado primero la marca en cuestión, dentro de la demarcación que ofrece la protección legal. *Ibid.*; *Colgate-Palmolive v. Mistolín,* 117 DPR 313 (1986). No obstante ello, el primer usuario de la marca no puede impedir el posterior uso de la misma por otros, en aquellas áreas en donde al momento no tiene -ni probablemente tendrá- operaciones. *Ibid.* De igual forma, éste tampoco podrá pretender la exclusividad de su marca si no utiliza la misma. Además, si la marca similar a la original no tiene una probabilidad de confusión con ésta, no podrá impedirse su utilización. *Ibid.*

Así las cosas, la determinación de si una marca es elegible a ser protegida bajo el derecho marcario depende de la categoría a que dicha frase o palabra pertenezca. *Posadas de P.R. v. Sands Hotel, supra.* Para propósitos de este análisis, las palabras o frases se dividen en cuatro categorías, a saber: arbitrarias o imaginables, sugestivas, descriptivas y genéricas. *Colgate-Palmolive v. Mistolín, supra.* El término arbitrario o imaginable no guarda relación con las características del producto o servicio que identifica la marca. Las marcas imaginables son producto de la invención del comerciante. Mientras, el término arbitrario se refiere a palabras comunes u ordinarias que no sugieren o describen los servicios envueltos. Estos no guardan relación lógica o sugestiva con las características reales de los productos. *Ibid.* ■

Asimismo, los términos sugestivos son aquéllos que sugieren mediante un esfuerzo de la imaginación del consumidor alguna característica del producto en cuestión. Ello requiere alguna imaginación por parte de una persona promedio para relacionar el producto con el término. *Colgate-Palmolive v. Mistolín, supra.* En contrario, el término descriptivo meramente describe una característica, cualidad o ingrediente del producto o servicio, sin necesidad de utilizar la imaginación. *Posadas de P.R. v. Sands Hotel, supra.*

Por otro lado, un término genérico es aquél que se refiere a género o clase dentro del cual un producto en particular es un espécimen. Este término se denomina o conoce por el público consumidor como nombre común del género y no de un producto de una fuente particular. *Ibid.* Cuando el término carece de distinción, cuando es identificado con el artículo producido en vez de aquél que lo produce o distribuye, entonces el vocablo es genérico. *Colón v. Carlos Martínez, Inc.,* 112 DPR 846 (1982). A estos efectos, las designaciones genéricas le indican al consumidor qué es el producto y no de dónde proviene. En cambio, una marca identifica un producto y lo distingue de aquellos producidos por otros. En consecuencia, algunos tratadistas entienden que un nombre genérico y una marca son mutuamente excluyentes. McCarthy, *McCarthy on Trademarks and Unfair Competition,* 4ta ed., 1999. ■

Habida cuenta de ello, en cuanto a los términos genéricos la Ley de Marcas, *supra,* en los acápites 4 y 5 de su sección 171 (c) prohíbe su registro. No obstante, el aludido artículo dispone que: *"(b)...las marcas mencionadas en las cláusulas (4), (5) y (6) del inciso (a) de esta sección serán inscribibles si hubieran adquirido, para los productos o servicios para los cuales se solicite el registro, un carácter distintivo como consecuencia del uso que se ha hecho de la misma."* 10 L.P.R.A. sec. 171(c). Así, pues, una marca genérica puede ser inscribible si hubiese adquirido un carácter distintivo o significación secundaria a consecuencia del uso que se ha hecho de la misma. El concepto de significación secundaria presupone que una palabra o frase, que originalmente y en su sentido primario no es susceptible de apropiación por ser descriptiva, puede, sin embargo, haber sido usada por tanto tiempo y con tal exclusividad por un productor con referencia a determinado artículo, que en el mercado la palabra o frase ha llegado a significar los bienes de un producto en particular. *Colgate-Palmolive v. Mistolín, supra.*

Así pues, la doctrina de significación secundaria se relaciona con un término descriptivo que da base a que surja un nuevo derecho de propiedad sobre una marca de fábrica con derecho a ser protegida. Lo anterior, significa que con relación a la marca, el conjunto de colores, palabras y diseños adquieren una significación secundaria en el mercado creando a favor de quien la reclama un derecho de propiedad. *Cooperativa Cafeteros v. Colón Colón,* 91 DPR 372 (1964). *"Se ha dicho que el establecimiento de un significado secundario depende de*

*la asociación que haga el público con una fuente particular aunque posiblemente anónima....". Ibid,* a la pág. 389.

Por último, *"[l]a categorización de una palabra o frase en derecho marcario se examina a base de la relación entre el producto o servicio y la marca en cuestión, y a base del mercado a quien va dirigido el producto. Una palabra puede ser genérica para determinado producto o servicio por determinar su género, mas puede ser descriptiva o arbitraria para otros. Por otro lado, puede que una palabra sea genérica para determinado mercado, mas no para otros." Posadas de P.R. v. Sands Hotel, supra,* a la pág. 40.

Analizada la controversia de autos bajo el crisol doctrinario previamente esbozado, nos encontramos en posición de resolver. Así lo hacemos.

## V

Por hallarse intrínsecamente relacionados, discutiremos en conjunto los errores señalados. Veamos.

Los derechos que otorga la Ley de Marcas, *supra,* así como las limitaciones impuestas a dicho derecho propietario, persiguen el mismo propósito: proteger la reputación y plusvalía que un negocio haya obtenido y promover la competencia en el sentido de proteger a los consumidores de confusión y monopolio. *Posadas de P.R. v. Sands Hotel, supra.* La recurrida esgrime que ha utilizado la marca *"Gallina Blanca"* desde el año 1977, estableciéndose y logrando reconocimiento en el mercado local para su marca. Por ello, objeta la solicitud de inscripción de *"Doña Gallina"* aduciendo que la misma ha de crear confusión entre los consumidores en detrimento de su marca. Ello, pues, Mendara se estaría beneficiando indebidamente de la plusvalía de *"Gallina Blanca".* Por otro lado, Mendara sostiene que *"Doña Gallina"* es distinguible de la marca *"Gallina Blanca",* eliminando el riesgo de confusión. Entre otras cosas, distingue el diseño de las etiquetas que acompañan a las referidas marcas y el producto que manufacturan.

La parte recurrente, entre otras cosas, esgrime que el término *"gallina"* es uno genérico. En consecuencia, alega que el mismo no es susceptible de ser apropiado. Se ha señalado que *"[u]na palabra puede ser genérica para determinado producto o servicio por determinar su género, mas puede ser descriptiva o arbitraria para otros. Por otro lado, puede que una palabra sea genérica para determinado mercado, mas no para otros."* (Citas omitidas) *Posadas de P.R. v. Sands Hotel, supra,* a la pág. 40. El foro administrativo recurrido, determinó que en el caso de autos el término *"gallina"* no era uno genérico por razón del mercado al cual se dirigen los productos en cuestión. Esto es, el mercado catalogado como alimentos elaborados bajo la clase 29; extractos de carne, pescados, aves y caza. En adición a lo anterior, refrendó las expresiones del Tribunal Supremo de Puerto Rico en cuanto a la posibilidad de que una palabra fuera genérica para un mercado y no así para otro. ▮ En consecuencia, halló que con relación a los productos elaborados por Mendara y Preparados, la palabra *"gallina"* no es genérica.

En tanto, el Tribunal Supremo de Puerto Rico ha establecido unos criterios que asisten al análisis sobre probabilidad de confusión entre dos marcas o servicios. Algunos de estos son: (1) la similitud entre las marcas; (2) similitud entre los productos; (3) la fuerza de la marca; (4) la intención del segundo usuario al adoptar la marca; (5) evidencia de confusión actual. *Posadas de P.R. v. Sands Hotel, supra.*

En cuanto a la similitud entre las marcas, es sabido que ello se ha de determinar al comparar las mismas en su totalidad. No empece, será suficiente que la parte dominante de la marca de anterior uso, sea imitada o copiada. De igual forma, las marcas no tienen que ser idénticas para que se configure una transgresión a la Ley de Marcas, *supra.* En el caso de autos, tanto la marca de la recurrente, como la de la parte recurrida comparten en su nombre el vocablo *"gallina".* Respecto a ello, y conforme a los mencionados criterios, el Departamento encontró que el término gallina -compartido por ambas marcas-, consiste en el vocablo que presta fuerza a las mismas. Asimismo, halló que en ambas etiquetas predomina el color amarillo, en adición a que Preparados utiliza la figura de la gallina en algunos de sus productos. Todo lo cual, le condujo a concluir que en efecto existe gran similitud entre

las marcas *"Doña Gallina"* y *"Gallina Blanca"*.

En cuanto a los servicios prestados, surge que las partes ante nos, compiten dentro del mercado de los alimentos. Específicamente, en el mercado de la preparación de caldos, cubitos y demás clasificación de la clase internacional 29 del Departamento. Acorde a lo hallado por el Departamento, tanto Mendara como Preparados producen productos de similar categoría.

Por su parte, con relación a la intención de Mendara de adoptar términos o colores similares a los de Preparados, el Departamento no encontró evidencia que indique que ésta actuara así de forma intencional. Además, en cuanto a la confusión actual, evidentemente por razón de que la marca *"Doña Gallina"* no ha sido utilizada en el mercado local, no surgió prueba al respecto. Sin embargo, procede señalar que la jurisprudencia no ha estimado necesario tener evidencia de ello para poder demostrar una infracción a la Ley de Marcas, *supra*.

Ciertamente, en vista del anterior análisis, se desprende inequívocamente que la Resolución de autos está basada en evidencia sustancial contenida en el récord administrativo. Ante ello, Mendara, acorde a los principios de revisión previamente esbozados, estaba obligada a ofrecer prueba que disminuya o menoscabe la aludida evidencia sustancial. Sin embargo, de nuestro análisis surge que Mendara no ha descargado efectivamente su carga. La parte recurrente hace una distinción basándose en que no produce cubitos de pollo, sino caldo de gallina. No obstante esta distinción, hallamos que la misma no es lo suficientemente persuasiva como para derrotar la presunción de corrección que acoge a las decisiones administrativas. Resulta indubitado, que al comparar la totalidad de las marcas ante nos, existe gran similitud entre las mismas. En adición a ello, destaca que ambas están enfocadas en el mismo mercado de productos.

Reiteramos que la revisión judicial de decisiones administrativas está limitada a determinar si hubo actuaciones arbitrarias, caprichosas o irrazonables por parte del foro administrativo. *Misión Industrial v. Junta de Planificación*, 146 DPR 64 (1998). Del caso ante nos, no se desprende que el Departamento haya actuado arbitraria o irrazonablemente. La Resolución recurrida es una fundamentada y en ausencia de prueba en lo contrario, se deben sostener las determinaciones del foro administrativo.

El Tribunal Supremo ha manifestado en repetidas ocasiones que las determinaciones de hechos adoptadas por la agencia serán sostenidas por los tribunales de estar éstas basadas en evidencia sustancial. *Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp., supra*. Por ello, es forzoso concluir que la decisión del Departamento se sostiene en el expediente administrativo. No se cometieron los errores señalados.

## VI

Por los fundamentos anteriormente expresados, se expide el auto y se confirma la Resolución recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 72

1. El 3 de enero de 2003, la parte recurrida presentó una Réplica al aludido escrito en Oposición a la solicitud de desestimación.

2. Véase, además, *Municipio de San Juan v. Junta de Calidad Ambiental*, **2000 JTS 193**; *T-JAC v. Caguas Centrum Limited*, **99 JTS 60**; *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997); *Agosto v. Fondo del Seguro del Estado*, 132 D.P.R. 866 (1993).

3. "*[e]ntre los objetivos que se persigue para que los foros administrativos emitan determinaciones de hechos y conclusiones de derecho, podemos enumerar los siguientes: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, y al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba; y (5) evitar que los tribunales se apropien en funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza.*" Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 276-278 (1987) según citado en *Municipio de San Juan v. J.C.A. y otros, supra*, a la pág. 126.

4. "*No empece esta deferencia, la interpretación de la agencia no merece deferencia si la misma afecta derechos fundamentales, resultare irrazonable, o conduce a la comisión de injusticias. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, res. el 2 de abril de 1998, 98 JTS 38.*" Según citado en *Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra*, a la pág. 489.

5. Véase además, *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (!er Cir. 1980).

6. Véanse además: *Two Pesos Inc. v. Taco Cabana Inc.*, 505 US 763 (1992); *Liquid Control Corp. v. Liquid Control Corp.*, 802 F.2d 934 (7mo Cir. 1986); *Abercrombie & Fitch Co. v. Hunting World Inc.*, 537 F.2d 9 (2do Cir. 1976).

7. Véase, *Resolución*, folio núm. 5 en Apéndice de autos.