ÁNGELA RODRÍGUEZ ORTÍZ, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* O-68-252     *Resuelto:* 30 de octubre de 1970

*Virgilio Brunet* y *Edwin A. Cuevas,* abogados de la peticionaria; *Eddie Gaud Caraballo, Emilio Delgado Roque* y *Milagros Muñiz Bou,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

El pleito en este recurso gira en torno al alcance y sentido del inciso 4, Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 3(4).

Es propio y conveniente que comencemos transcribiendo el texto de dicho inciso, del que indefectiblemente debemos partir en el descargo de nuestra función, sin prescindir, por supuesto, de otros elementos útiles y pertinentes a la interpretación estatutaria. Dicho inciso lee como sigue:

"4. Si como resultado de la lesión o enfermedad el caso del obrero o empleado fuere resuelto como uno de incapacidad total permanente, el obrero o empleado continuará recibiendo una suma igual al sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el día del accidente o que hubiere de percibir a no ser por la ocurrencia del accidente durante el tiempo que se prolongue esta incapacidad total, pero en ningún caso se pagará más de noventa (90) dólares mensuales, ni menos de cuarenta (40) dólares mensuales; y *Disponiéndose, que a solicitud del beneficiario, y en lugar de la pensión vitalicia, el Administrador podrá pagar al beneficiario la compensación, en parte o en total y de una sola vez, siempre que éste justificare una inversión provechosa, a juicio del Administrador, a cuyos efectos la compensación se calculará a base de quinientas cuarenta (540) semanas por un término que, sumado al término durante el cual el lesionado hubiere ya recibido los pagos mensuales de compensación, no exceda quinientas cuarenta (540) semanas.* Si después de hecha la inversión quedare algún remanente, éste se pagará a razón de cincuenta (50) dólares mensuales, salvo que el beneficiario optare por una subsiguiente inversión." (Énfasis nuestro.) (¹)

_____
(¹) Dicho inciso ha sido posteriormente enmendado por la Ley Núm. 103 de 21 de junio de 1968.

Los hechos que dieron motivo al pleito se refieren a la incapacidad total y permanente sufrida por la recurrente Ángela Rodríguez Ortíz como consecuencia de un accidente del trabajo. A tenor con el anterior inciso, el Administrador del Fondo del Seguro del Estado le estimó una compensación equivalente al sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el día del accidente pagaderos en plazos mensuales de $90.00 durante el tiempo que se prolongara la incapacidad total. En vez de recibir el pago mensual de $90.00, Doña Ángela optó por acogerse al pago total y de una sola vez que provee dicho inciso para cuando el beneficiario justifica una inversión provechosa. El Administrador le computó este pago global a base de $35.00 por 540 semanas para un total de *$19,023*. [2] La recurrente no estuvo

---

[2] El pago total propiamente asciende a $18,900. El desglose de cantidades pagadas a la recurrente es el siguiente:

| | |
|---|---|
| "Cantidad total pagada en el caso ................... | $19,023.00 |
| Evaluación del caso cuando se acogió a la alternativa de inversión para incapacidad total permanente ($35.00 x 540 semanas) ........................................... | $18,900.00 |

Pagos efectuados antes de autorizarse inversiones:

| | |
|---|---|
| Por el 40% de pérdida de las funciones fisiológicas generales otorgado originalmente ............................ | $ 1,850.00 |
| Para pago de honorarios de abogado ................. | 1,000.00 |
| Por concepto de mensualidades ...................... | 515.00 |

(Antes de la recurrente hacer inversión, como estos pagos había que descontarlos de la evaluación que se hizo de la cantidad total a pagar en el caso, de las mensualidades vencidas que a razón de $90.00 había que pagar a la recurrente se le descontaba lo pagado por estos conceptos y por esto sus mensualidades se pagaban en cantidad menor de $90.00.)

| | |
|---|---|
| 6 mensualidades a $61.25 ................ | $369.00 |
| enero de 1965 ......................... | 50.00 |
| abril de 1965 ......................... | 96.00 |
| TOTAL ......................... | $515.00 |

INVERSIONES:

| | |
|---|---|
| 5 de enero de 1965 ................................. | 7,658.00 |
| 5 de enero de 1965 ................................. | 8,000.00 |
| TOTAL ......................................... | $18,900.00" |

de acuerdo aduciendo que la compensación debía computarse a base de sesenta y seis y dos tercios (66⅔) por ciento del jornal que ella percibía al momento del accidente por 540 semanas. Su jornal semanal ascendía a $83.04. Aplicada su fórmula a base de este jornal, la compensación ascendería a *$29,894* en vez de los *$19,023.00* estimados a base de la fórmula del Administrador. La Comisión Industrial confirmó la computación del Administrador.

La recurrente nos pide que revoquemos la resolución de la Comisión Industrial sosteniendo que su fórmula de compensación—sesenta y seis y dos tercios (66⅔) por ciento del jornal por 540 semanas—es la correcta. Su contención es, en efecto, que el inciso 4 establece dos compensaciones distintas para la incapacidad total permanente: una periódica del sesenta y seis y dos tercios (66⅔) por ciento del jornal semanal con el límite de $90 mensuales máximo y $40 mínimo durante el tiempo que se prolongue la incapacidad, y otra de sesenta y seis y dos tercios (66⅔) por ciento del jornal semanal por 540 semanas sin límite alguno para cuando el lesionado decida acogerse, con la aprobación del Administrador, al pago total o en parte de una sola vez.

No estamos de acuerdo. El inciso 4 establece la compensación para los casos de incapacidad *total* permanente, fijándola en un sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el lesionado el día del accidente, pero limitada a un máximo de noventa (90) dólares mensuales y un mínimo de cuarenta (40) dólares. El propósito evidente de esta compensación es proteger al lesionado y sus dependientes proveyéndoles de una cantidad de dinero en forma periódica que viene a sustituir el jornal durante el término de la incapacidad. Es una fórmula uniforme que prevalece en la legislación de compensaciones por accidentes del trabajo en las jurisdicciones de los Estados Unidos. Schneider, *Workmen's Compensation*, Vol. 8, sec. 1890 (3rd ed.). Sin embargo, mediante el "Disponiéndose" que hemos

subrayado en el texto transcrito se permite como excepción el pago global de la compensación—"en parte o en total y de una sola vez"—siempre que el lesionado justifique una inversión provechosa, a juicio del Administrador.

■ El texto del inciso es razonablemente claro. Se trata de una compensación cuyo pago puede efectuarse en dos formas distintas: periódica o globalmente. En ambos casos la compensación se computa a base del sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el lesionado al momento del accidente, sujeto a un máximo de $90.00 mensuales y a un mínimo de $40. A distinción del pago periódico, cuyo monto es indeterminado porque depende del término en que se prolongue la incapacidad, la cual puede ser durante el resto de vida del lesionado, el pago global por su naturaleza tiene que hacerse en una cantidad determinada. El legislador fijó en el "Disponiéndose" la forma de determinarla a base de 540 semanas.

En verdad, la interpretación del recurrente adolece de un literalismo complaciente. Por un lado, fracciona el "Disponiéndose" del resto del inciso 4, como si fuera una cuestión separada y distinta. Como en el "Disponiéndose" no se repite el máximo y el mínimo de $90–$40 para el cómputo de la compensación, concluye de esto que el pago global no está sujeto a dichos límites. Pero, por otro lado, como el "Disponiéndose" no provee fórmula alguna para la computación de la compensación, sino que se circunscribe a fijar la base para determinar el pago global, el recurrente se ve cogido en la encerrona de su interpretación literalista, y, para evadir su consecuencia lógica acude al resto del inciso a buscar la fórmula. Pero lo hace a medias, ya que sólo entresaca un factor para la computación que le es favorable, el del sesenta y seis y dos tercios (66⅔) por ciento del jornal semanal, pero rechaza el otro, el del mínimo y el del máximo de $90–$40 porque le es desfavorable. La aplicación estricta de su propia interpretación—leer el "Disponiéndose" aisla-

damente del resto del inciso como si estableciera una compensación distinta—lo deja sin fórmula alguna para computar el pago global. El vicio de su interpretación es, pues, manifiesto.

■ El sentido racional del "Disponiéndose" se logra únicamente cuando se le considera como parte integrante del resto del inciso. O sea, como parte de un todo, siendo este todo la compensación que provee el inciso 4: el sesenta y seis y dos tercios (66⅔) por ciento del jornal semanal que percibía el lesionado el día del accidente, sujeto a un máximo de $90 y mínimo de $40, salvo que cuando la compensación se paga globalmente, entonces, se determina la cantidad a base de 540 semanas.

■ El impacto económico de la interpretación del recurrente es extraordinario. La misma aumenta en más de 160% la compensación cuando el pago se efectúa globalmente. Esto es, de alrededor de $11,000 a más de $29,000.(³) Es lógico deducir que tal impacto económico no podía pasar desapercibido para el legislador, y, que si la intención legislativa hubiera sido la de crear dos compensaciones distintas para la incapacidad total permanente, con una consecuencia econó-

---

(³) El pago global computado a base de 66⅔% del jornal semanal con un límite de $90–$40 por 540 semanas asciende a $11,215.80. La operación aritmética es la siguiente: como el 66⅔% del jornal que percibía la recurrente es superior al límite mensual de $90 fijado por el inciso 4, se multiplica el límite máximo de $90 mensual por 12 meses para un total de $1,080, dicha cantidad se divide por 52 semanas para obtener el límite máximo semanal lo que arroja un resultado de $20.77 semanales. Es ésta la cantidad que se multiplica por 540 semanas para un total de *$11,215.80*.

El pago global computado a base de la interpretación propulsada por la recurrente asciende a *$29,894.40*. La operación aritmética utilizada por el recurrente es la siguiente: multiplica el jornal diario de $13.84 por 6 días laborables para obtener el jornal semanal de $83.04. De esta cantidad obtiene el 66⅔ por ciento que equivale a $55.36, la cual se multiplica por 540 semanas para un total de $29,894.40. La diferencia entre el resultado de una y otra fórmula es de $18,678.60.

La fórmula equivocadamente utilizada por el Administrador fue a base de $35 multiplicado por 540 semanas para un total de $18,900.

mica tan sustancial, lo hubiera hecho expresamente en el texto de la ley. Máxime, cuando estas compensaciones no son caprichosamente fijadas, sino que son estructuradas a base de estudios actuariales o económicos, y, que variaciones en los factores de computación como los que propulsa la recurrente, o como veremos más adelante, como los que aplicó el Administrador en este caso, podrían tener efectos adversos en la estabilidad económica del Fondo.

Por otro lado, la computación efectuada por el Administrador y confirmada por la Comisión Industrial, también es equivocada. El Administrador calculó la compensación a base de sesenta y seis y dos tercios (66⅔) por ciento del jornal semanal con un límite de $35 *semanales* en vez del límite de $90–$40 *mensuales* establecido en el inciso 4. Véase escolio 3. El límite de $35 semanales aparece en el inciso 3 del Art. 3 para la computación de la compensación por incapacidad *parcial* permanente. (⁴) En otras palabras, el Administrador computó el pago global no a base de las fórmulas establecidas en el inciso 4—sesenta y seis y dos tercios (66⅔) por ciento del jornal con el límite mensual $90–$40 por 540 semanas—sino que acudió al inciso 3 para utilizar un límite distinto, el de $35 semanales.

No vemos razón válida alguna para abandonar la fórmula de computación establecida en el inciso 4 aprobada específicamente para cubrir la incapacidad *total* permanente, que es la que nos concierne en este caso, y sustituirla en parte por las disposiciones de otro inciso, el 3 que cubre otro tipo de incapacidad, la *parcial* permanente.

---

(⁴) Dicho inciso 3 en lo pertinente dispone:

3. ". . . Por las incapacidades parciales permanentes especificadas a continuación, el obrero o empleado lesionado recibirá una compensación adicional consistente en el sesenta y seis y dos tercios (66%) por ciento del jornal que percibía el día del accidente, durante el número de semanas según se fija en la tabla que se inserta a continuación; Disponiéndose, que en ningún caso se pagará al obrero o empleado más de treinta y cinco (35) dólares ni menos de ocho (8) dólares por semana:".

Nada hay en el actual Art. 3 ni en sus precedentes que pueda justificar esta desviación del Administrador. Si algo demuestra el historial del Art. 3 es la intención legislativa de establecer una compensación separada para cada tipo de incapacidad. Desde que se aprobó la Ley Núm. 145 de 18 de abril de 1935 el legislador proveyó una compensación específica para cada una de las incapacidades, la *transitoria*, la *parcial* permanente y la *total* permanente. En cada una de ellas aplicó una fórmula similar que consiste de tres factores: a) un por ciento del jornal semanal, b) con un límite mínimo y un máximo, c) por un número determinado de semanas. Los límites se establecieron sobre una base *semanal* hasta el 1957, en que por virtud de la Ley Núm. 94 de 22 de junio de 1957, el límite en el caso de la incapacidad *total* permanente se estableció sobre una base *mensual* continuando así hasta el presente. El legislador ha revisado periódicamente las fórmulas para aumentar las compensaciones pero manteniendo la misma estructura de la fórmula a base de los factores que mencionamos anteriormente. Véanse las leyes: Núm. 52 de abril 25, 1942, Núm. 162 de mayo 14, 1943, Núm. 284 de mayo 15, 1945, Núm. 163 de mayo 2, 1950, Núm. 115 de julio 1, 1953, Núm. 52 de junio 16, 1956, Núm. 94 de junio 22, 1957, Núm. 79 de junio 25, 1959, Núm. 101 de junio 24, 1960.

■ Por último, no puede el Administrador valerse en este caso de la norma jurisprudencial al efecto de que las interpretaciones y prácticas administrativas de los organismos administrativos especializados deben merecer gran respeto y consideración a los tribunales. *Monllor & Boscio* v. *Comisión Industrial*, 89 D.P.R. 397 (1963); *Vda. de Alfonzi* v. *Comisión Industrial*, 90 D.P.R. 693 (1964). Esta prudente y sabia norma se aplica cuando el texto del estatuto es ambiguo y la interpretación administrativa ha sido generalmente aceptada por un largo período de tiempo. Véanse:

Davis, I *Administrative Law Treatise*, sec. 5.06: Crawford, *The Construction of Statutes*, sec. 219 (1940).

Ninguna de estas condiciones prevalece en el caso de autos. No sólo es claro el texto del inciso 4, sino que, como hemos visto, la interpretación del Administrador es manifiestamente errónea. Tampoco dicha interpretación ha sido generalmente aceptada. De la propia resolución de la Comisión Industrial se desprende que el Contralor de Puerto Rico objetó la interpretación del Administrador.

No obstante nuestra conclusión al efecto de que la Comisión Industrial erró al interpretar el mencionado inciso 4, *se dictará sentencia confirmando la resolución recurrida, ya que dicho error lejos de perjudicar al recurrente le beneficia.*

El Juez Presidente Señor Negrón Fernández no intervino, al igual que el Juez Asociado Señor Santana Becerra.