JOSÉ M. ALONSO GARCÍA, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, etc., demandada.

*Número:* O-74-378     *Resuelto:* 27 de enero de 1975

*Jorge Márquez Gómez, Miguel A. Guzmán Soto* y *José F. Reyes del Valle,* abogados del recurrente.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 29 de agosto de 1969 el obrero Narciso Camacho sufrió un accidente del trabajo. Se le fijó una incapacidad del 20% de las funciones fisiológicas generales. Se dispuso más tarde el reexamen del caso, mas el obrero falleció el 8 de junio de 1972 por causa no relacionada con su empleo. El 27 de marzo de 1973 el Administrador del Fondo del Seguro del Estado determinó que el obrero estaba incapacitado totalmente a la fecha de su muerte y ordenó el pago del remanente a sus beneficiarios, la viuda y un hijo incapacitado, en mensualidades de $125.00.

La viuda no estuvo de acuerdo con la forma mensual de pago, por interesar que se autorizase el pago global de lo adeudado para realizar una inversión, y apeló a la Comisión In-

dustrial. La Comisión revocó al Administrador, ordenándole que le permitiese a la viuda optar por el pago global de lo adeudado para efectuar una inversión provechosa en vez de por el pago de una pensión. Es de esta resolución de la Comisión Industrial que recurre ante nos el Administrador del Fondo.

La concesión de pagos globales representa la excepción y no la regla en el derecho de compensación a obreros. 8 Schneider, *Workmen's Compensation*, 3ª ed., 351; Blair, *Reference Guide to Workmen's Compensation*, 1973, sec. 15:00. El uso excesivo o poco cuidadoso de este método amenaza en la actualidad el sistema de compensación a obreros de algunas comunidades. 3 Larson, *The Law of Workmen's Compensation*, 1973, sec. 82.71, pág. 354.31. Se ha expresado que únicamente en casos verdaderamente excepcionales debe autorizarse el modo de pago global. 3 Larson, *op. cit.* 354.32; Schneider, *loc. cit.* La razón es evidente. El propósito normal de la compensación a obreros es proveer una cantidad de dinero periódica que sustituya el jornal perdido. *Rodríguez* v. *Comisión Industrial*, 99 D.P.R. 368, 371 (1970) (Torres Rigual). A la luz de estos principios consideramos que debe tan sólo estimarse que existe discreción administrativa para autorizar pagos globales bajo nuestra Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*, cuando nuestra Asamblea Legislativa haya concedido dicha facultad en forma expresa e inequívoca.

En el penúltimo párrafo del Art. 3(4) de dicha Ley, 11 L.P.R.A. sec. 3(4), se dispone:

"En todos los casos en que ocurriere la muerte de un obrero o empleado por cualquier causa independiente a la lesión recibida en el accidente, por la cual se hubiere reconocido o esté pendiente de reconocerse una incapacidad total permanente, se procederá en la siguiente forma:

(a) Si el lesionado hubiere optado por una inversión, el remanente de su compensación se pagará a los beneficiarios en

pagos mensuales de $125.00 sujeto a las limitaciones impuestas por el primer párrafo del inciso 5(3)(c) de esta sección; si subsistieren otros beneficiarios además de la viuda, hijos o concubina, la distribución se hará con sujeción a las disposiciones del inciso 5(3) de esta sección.

(b) Si el lesionado no hubiere optado por una inversión, la compensación total se computará multiplicando 540 semanas por su compensación semanal equivalente al 66⅔% del jornal semanal que el lesionado percibía el día del accidente o que hubiere de percibir a no ser por la ocurrencia del accidente, pero en ningún caso se calcularán semanas de más de cuarenta y cinco (45) dólares, ni menos de diez (10) dólares. La compensación total no excederá en ningún caso de dieciocho mil novecientos (18,900) dólares. De la compensación total así computada se deducirá el montante pagado al trabajador lesionado con anterioridad a su muerte y el remanente se pagará a sus beneficiarios, en la forma y con las limitaciones dispuestas en el subinciso (a) que antecede."

Lo citado se refiere a la situación precisa ante nos. Adviértase que tanto bajo el subinciso (a) como bajo el (b) los pagos a los beneficiarios tienen que efectuarse mensualmente. Luego que se computa la totalidad de lo adeudado en el caso a que alude el subinciso (b), se dispone que "el remanente se pagará a sus beneficiarios, *en la forma y con las limitaciones dispuestas en el subinciso (a) que antecede*", esto es, mensualmente. (Énfasis nuestro.)

Nótese, además, que otra limitación a que se refiere el subinciso (a) es la provista en el primer párrafo del inciso 5(3)(c) de la misma sección, 11 L.P.R.A. sec. 3(5)(3)(c), en cuya primera oración se dice: "El derecho a compensación de la viuda o concubina, como dependiente del obrero o empleado fallecido, cesará si se casara o viviera en concubinato." De permitírsele a la viuda el cobro total de la compensación concedida se podría burlar en ocasiones este mandato legislativo.

Cuando la Asamblea Legislativa ha deseado conceder la facultad que aquí se cuestiona lo ha hecho claramente. Si el

fallecimiento ocurre por causa del accidente, por ejemplo, se dispone en el último párrafo del inciso 5(3) (f) del Art. 3 de la Ley que si "los beneficiarios fueren el padre o la madre únicamente solos o en concurrencia con otros beneficiarios de categoría inferior, la compensación total no excederá de diez mil quinientos ($10,500) dólares, disponiéndose que a los fines de una inversión que a juicio del Administrador fuere provechosa, éste podrá anticipar al padre o madre del obrero fenecido o a ambos hasta el cincuenta (50) por ciento de su participación en la compensación." Tal derecho se le niega a la viuda en el segundo y tercer párrafos del mismo inciso. Véanse también la primera oración del inciso 4 de la Sec. 3 y lo provisto en dicha sección para los casos de incapacidad parcial bajo el epígrafe "Forma de Pago".

Preocupó evidentemente a la Comisión Industrial en su Resolución de 10 de setiembre de 1974 la diferencia que nuestra legislación establece entre casos de incapacidad permanente e incapacidad parcial. La sabiduría de esta distinción es asunto, sin embargo, que compete exclusivamente al proceso legislativo. Desde el punto de vista estrictamente constitucional no puede establecerse que la distinción sea irrazonable. Ni la jurisprudencia ni la doctrina lo exige así. *"Developments in the Law—Equal Protection"*, 82 Harv. L. Rev. 1065 (1969). La legislación de otras comunidades es también muy selectiva por lo general en la autorización de pagos globales. Véase: 8 Schneider, *Workmen's Compensation*, secs. 1813–1865.

*Se revocará la Resolución de la Comisión Industrial.*