# 2006 DTA 57

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL II**

ARCADIO TORRES TORRES
Recurrente

v.

ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE
LOS EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-05-00883

San Juan, Puerto Rico, a 10 de marzo de 2006

Panel compuesto por su Presidenta, la Juez Peñagarícano Soler,
y los Jueces González Vargas y Ramírez Nazario

Peñagarícano Soler, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos, el Sr. Arcadio Torres Torres (en adelante, el recurrente), mediante Recurso de Revisión

Administrativa presentado el 1ʳᵒ de diciembre de 2005. Nos solicita revisemos la Resolución emitida el 25 de agosto de 2005, por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, la Junta). La aludida Resolución fue archivada en autos el 27 de septiembre de 2005. Por la misma, se le denegó la reinstalación de los beneficios de la pensión por incapacidad no ocupacional que antes recibía.

Habiendo analizado los documentos que obran en autos, y a la luz del derecho vigente, determinamos confirmar la Resolución recurrida.

## I

El recurrente realizó labores para el Servicio de Bomberos de Puerto Rico, cotizando en total unos 20.50 años de servicio para el sistema de retiro. El 13 de enero de 1987, el recurrente solicitó ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, la Administración) una pensión por incapacidad no ocupacional. ■ Adujo, que sufría de una condición nerviosa y de alta presión. El 10 de noviembre de 1987, la Administración notificó al recurrente que había aprobado su solicitud de pensión por incapacidad no ocupacional. ■

El 10 de mayo de 1988, la Administración le envió una carta indicándole sobre un reajuste en la pensión que le fuera aprobada, y advirtiéndole, además, sobre su obligación, entre otras cosas, de someterse a exámenes médicos. ■ Ello, para poder seguir el progreso de su condición médica, conforme lo que dispone la Ley de Retiro del Personal del Gobierno, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, (3 L.P.R.A. sec. 761 *et seq*).

El 22 de junio de 1989, la Administración recibió un documento intitulado *"Informe sobre pensionados"* en donde se indica que el Sr. Juan U. Torres Torres -hermano del recurrente-, había devuelto ciertos cheques pertenecientes a este último. ■ Esto, debido a que el recurrente se hallaba con paradero desconocido. El 25 de junio de 1990, la Administración envió una carta al recurrente solicitándole información sobre su condición médica para efectos de la reevaluación periódica que se requiere en los casos de pensión por incapacidad. ■ Asimismo, el 1ʳᵒ de agosto de 1990, la Administración envió al recurrente una de varias cartas notificándole de la necesidad de que se sometiera a un examen médico para verificar el estado de su condición. ■ Sin embargo, el recurrente continuó ausente de la jurisdicción de Puerto Rico, conforme lo admitido por éste en su recurso de revisión. Así pues, surge del expediente administrativo que la Administración en abril de 1990, determinó eliminarle de su nómina paralizando así los pagos por concepto de la pensión. ■

En tanto y transcurridos 10 años, el 7 de agosto de 2000, el Sr. Juan J. Torres Torres (en adelante, señor Torres), solicitó ante la Administración que se le nombrara tutor del recurrente. El 31 de agosto de 2000, la Administración le notificó por escrito al señor Torres de su nombramiento como tutor del recurrente. ■ La designación fue hecha mediante Resolución emitida el 7 de agosto de 2000. No obstante, durante la investigación rutinaria sobre la reinstalación de pensión solicitada, la Administración determinó que la misma no procedía. En consecuencia, el 18 de mayo de 2001, la Administración remitió una carta al recurrente indicando que no le asistía el derecho a recibir la pensión que le fuera suspendida en el año 1990. ■ En esta misiva, se le señaló, además, que la designación de tutor era nula por razón de que había cesado de ser pensionado en el año 1990. ■

Luego de la reconsideración presentada por el recurrente, el 21 de junio de 2001, la Administración se reiteró en su negativa de reinstalación de pensión. ■ No conforme, el 24 de julio de 2001, el recurrente presentó una apelación ante la Junta. ■ El 11 de abril de 2002, la Administración presentó su contestación a la apelación. ■ El 9 de septiembre de 2003, se celebró una vista en donde las partes acordaron que el caso fuera sometido por el expediente y los respectivos memorandos de derecho. Por entenderlo necesario, la Oficial Examinadora pautó una vista administrativa a celebrarse el 18 de febrero de 2005. En la misma, estuvieron presentes los representantes legales de las partes. Asimismo, compareció -conforme fuera citada-, la Sra. Nydia Rodríguez

Rivera, Gerente de la División para la Designación Administrativa de Tutores de la Administración. Sin embargo, a pesar de que tanto el recurrente como su hermano, el señor Torres, fueron citados a testificar, ambos faltaron a la vista. De autos no surge que hayan presentado los motivos para su incomparecencia. Es menester señalar, que conforme la transcripción de la aludida vista evidenciaria, el representante legal del recurrente reiteró su interés de que el caso se sometiera por el expediente, y se opuso así a que se tomara el testimonio de la mencionada funcionaria encargada de la designación de tutores. ■

Así pues, el 27 de septiembre de 2005, la Junta emitió la Resolución recurrida, confirmando la decisión tomada por la Administración. ■ El 27 de octubre de 2005, el recurrente presentó una moción de reconsideración ante la Junta, la cual no fue acogida. Inconforme con la anterior determinación, el recurrente acude ante nos indicando el siguiente señalamiento de error:

*"ERRÓ LA HONORABLE JUNTA DE SÍNDICOS AL INTERPRETAR RESTRICTIVAMENTE LA LEY NÚM. 447 DEL 15 DE MAYO DE 1951; SEGÚN ENMENDADA, EN ABUSO DE DISCRECIÓN Y ARBITRARIAMENTE, AL CONFIRMAR LA DECISIÓN SOBRE SUSPENSIÓN DE PENSION POR INCAPACIDAD NO OCUPACIONAL Y NO REINSTALACIÓN DE LA MISMA, ASÍ COMO HABER DECLARADO NULO EL NOMBRAMIENTO DE TUTOR DEL APELANTE EN CUAL SE HABÍA CONVERTIDO EN FINAL Y FIRME."*

El 12 de enero de 2006, la Administración compareció mediante escrito en cumplimiento de orden. El 27 de enero de 2006, emitimos una Resolución ordenando elevar el expediente administrativo del caso de autos.

## II

*"El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de la evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho."* Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pág. 534. El expediente de la agencia constituirá la base exclusiva para la acción de la agencia en un procedimiento adjudicativo y para la revisión judicial ulterior. Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2168.

Habida cuenta de ello, al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de manera arbitraria, ilegal o tan irrazonable que sus actuaciones constituyeron un abuso de discreción. *Municipio de San Juan v. J.C.A. y otros*, 149 D.P.R. 263 (1999), a la pág. 280, citando a *Fuertes v. A.R.P.E.*, 134 D.P.R. 947 (1993). ■ Para que el tribunal revisor se encuentre en posición de analizar la determinación tomada por el organismo administrativo, es imprescindible que las agencias acojan determinaciones de hechos y de derecho. El Tribunal Supremo de Puerto Rico ha manifestado en reiteradas ocasiones que las determinaciones de hechos adoptadas por la agencia serán sostenidas por los tribunales de estar éstas basadas en evidencia sustancial. Se considera a la evidencia sustancial como aquella evidencia que *"una mente razonable pueda aceptar como adecuada para sostener una conclusión"*. *Asoc. de Vecinos Hosp. San Jorge v. United Medical Corp.*, 150 D.P.R. 70 (2000), a la pág. 75; *Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R.*, 144 D.P.R. 425 (1997).

Predicado en lo anterior, los tribunales están compelidos a no intervenir con las determinaciones de hechos tomadas por la agencia administrativa de hallarse fundamentadas en prueba que surge del récord administrativo. *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico*, 151 D.P.R. 269 (2000); *Costa Wood, et al. v. Caguas Expressway Motors, Inc.*, 149 D.P.R. 881 (1999). ■ *"El fin primordial de esta norma es evitar que el criterio de la agencia administrativa en materia especializada sea sustituido por el criterio del tribunal revisor"* OEG v. Rodríguez Martínez, **2003 J.T.S. 51**, a la pág. 795. (Citas omitidas.)

Asimismo, el principio neurálgico de la revisión judicial administrativa es el salvaguardar la corrección de las actuaciones administrativas. La intención legislativa ha sido de revestir a las determinaciones realizadas por las agencias, con un velo de corrección y legitimidad. Por ello, es ampliamente conocido que las actuaciones de las agencias administrativas gozan de la más dilatada deferencia. No obstante, la deferencia no ha de ser óbice para la revisión en aquellos casos donde la misma menoscabe derechos de índole fundamental o sea irrazonable. ■■ *Costa Wood, et al. v. Caguas Expressway Motors, Inc., supra; Castillo Camacho v. Dpto. del Trabajo,* 152 D.P. R. 91 (2000); *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692 (1975); *Quevedo Segarra v. J.A.C.L.,* 102 D.P.R. 87 (1974); *Rodríguez v. Comisión Industrial,* 99 D. P.R. 368 (1970); *Román v. Superintendente de la Policía,* 93 D.P.R. 685 (1966).

Con respecto de las determinaciones de derecho, el Tribunal Supremo de Puerto Rico pronunció:

*"Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas 'en todos sus aspectos por el tribunal', LPAU, sec. 4.5, 3 L.P.R.A. § 2175 (1992), sin sujeción a norma o criterio alguno. Véase, Miranda v. Comisión Estatal de Elecciones, ante. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente -antes y después de la vigencia de la LPAU- que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos."* Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, *supra,* a la pág. 1266. (Citas omitidas.)

Acorde a lo anterior, la parte que objete las determinaciones de hechos emitidas por una agencia administrativa deberá acreditar que el organismo actuó de manera arbitraria, caprichosa o en patente menoscabo a derechos fundamentales. *Maisonet v. Fondo del Seguro del Estado,* 142 D.P.R. 194 (1996); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987). El criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. No obstante, la deferencia reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R., supra; Rodríguez v. Comisión Industrial;* 99 D.P.R. 368 (1970).

Finalmente, el foro judicial podrá sustituir el criterio del organismo administrativo por el propio, sólo en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. Sin embargo, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. *Dye-Tex de P.R. v. Royal Ins. Co.,* 150 D.P.R. 658 (2000); *Rodríguez Roldán v. Municipio de Caguas,* 133 D.P.R. 694 (1993).

Por su parte, la Ley Núm. 447, *supra,* establece en su sección 769 establece que:

*"Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:*

*Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.*

*El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.*

*Que el Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.*

*El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud."* 3 L.P.R.A. sec. 769.

El Tribunal Supremo de Puerto Rico ha expresado, que la definición de incapacidad que rige los procedimientos ante el Retiro *"[...] debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo [...]". Sánchez v. A.S.R.E.G.J.,* 116 D.P.R. 372 (1985). Se colige, pues, que la definición de incapacidad que acoge el Retiro es más restrictiva que las de otras agencias similares. El peticionario ante el Retiro está obligado a demostrar que su incapacidad es de tal magnitud que le impide realizar no sólo las funciones del puesto que ocupara, sino también las de cualquier otro puesto remunerativo de igual paga que el que percibía. *Rodríguez Sierra v. Administración de los Sistemas de Retiro de los Empleados del E.L.A. y la Judicatura,* **2003 J.T.S. 79**.

Asimismo, en el Artículo 2-111 de la Ley Núm. 447, *supra*, se enuncia que:

*"Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico [...]*

*El Administrador podrá requerir que todo pensionado que esté disfrutando de una anualidad por incapacidad, que no sea total y permanente, se someta periódicamente a un examen que practicaran uno o más médicos nombrados por el Administrador para determinar el estado de salud del participante y su grado de incapacidad [....]*

*La suspensión de la anualidad procederá luego de determinarse que ha cesado la incapacidad del participante y haya transcurrido el término de noventa (90) días de la notificación al empleado para que requiera la reinstalación de éste, conforme se establece en esta sección. Además, el Administrador suspenderá los pagos de la anualidad si el participante rehusare someterse a examen médico [....] 3 L.P.R.A. sec. 771."*

En tanto, el *Reglamento Para la Designación Administrativa de Tutores,* Núm. 4265, aprobado el 26 de junio de 1990 (en adelante, Reglamento), fija los criterios a seguir por la agencia para determinar si procede designar un tutor a algún pensionado. Así, pues, el mismo expone en su Artículo 5.1:

*"El Administrador tendrá facultades para el nombramiento administrativo de tutores, en los siguientes casos:*

*a) Cuando un pensionado del Sistema esté mentalmente incapacitado para administrar sus propios bienes o para manejar sus fondos;*

*b) Cuando un participante del Sistema se acoja al retiro por edad, años de servicio o por incapacidad y esté mentalmente incapacitado para administrar sus propios bienes o para manejar sus fondos;*

*c) Cuando el beneficiario de un participante o de un pensionado sea menor de edad o esté incapacitado mental o físicamente."*

Por su parte, la Regla 7 del citado Reglamento, *supra*, establece en particular, que ordinariamente será

necesario contar con una recomendación médica previo a la designación de tutor:

*"7.1- Toda designación administrativa de tutor para un participante o un pensionado deberá estar precedida de una recomendación médica a tales efectos:*

*a) Del médico de tratamiento privado o del médico designado por el Administrador para evaluar a un participante que haya pedido acogerse a una pensión por incapacidad, si al evaluarlo se determina que está mentalmente incapacitado para administrar sus propios bienes o para manejar sus fondos;*

*b) Del médico designado por el Administrador para reevaluar un pensionado por incapacidad;*

*c) Del médico de tratamiento privado de un pensionado por edad o años de servicio, si determina que el pensionado está mentalmente incapacitado o que estando mentalmente capacitado, tiene una incapacidad física de tal naturaleza que le impide administrar sus propios bienes o manejar sus fondos.*

*7.2- Si la evaluación del médico de tratamiento privado fuese de una incapacidad física, la petición de tutoría se tramitará de conformidad con la Regla 5.2 de este Reglamento. En estos casos, la evidencia médica deberá contener un diagnóstico claramente establecido de la incapacidad. Si el Comité, al examinar el diagnóstico del médico de tratamiento determina que es claro y definitivo, tramitará el expediente de tutela sin más dilaciones y sin necesidad de una evaluación adicional por el Administrador.*

*7.3- Sí (sic) la evaluación del médico de tratamiento privado fuese de una incapacidad mental el Comité, podrá a su discreción, requerir que el pensionado se someta a examen y evaluación por el Administrador o tramitar el expediente sin más dilaciones ni necesidad de una evaluación adicional por el Administrador.*

*7.4- Cuando el Administrador reciba una recomendación médica para que se nombre un tutor a un pensionado o beneficiario o cuando se adjudique un beneficio a un menor de edad que requiera un tutor, el Administrador, a través del Arca (sic) correspondiente, lo notificará por correo certificado con acuse de recibo al incapacitado, su abogado o a los familiares o personas encargadas del menor o incapacitado, según sea el caso, dentro de los diez (10) días siguientes al recibo de la recomendación médica. Simultáneamente a la expedición de la notificación, el Área remitirá el expediente al Comité para los trámites ulteriores.*

*7.5- La notificación hecha por el Arca (sic) correspondiente deberá contener lo siguiente:*

*a)   un breve resumen de la recomendación médica;*

*b)   advertirá que el Administrador ha determinado que es necesario y conveniente nombrar un tutor al pensionado o beneficiario;*

*c)   advertirá que los pagos de la pensión o beneficio se retendrán hasta que se nombre un tutor;*

*d)   advertirá al pensionado o beneficiario que deberá comparecer acompañado, de su candidato a tutor;*

*e)   contendrá un señalamiento de la fecha, hora y lugar en que las personas interesadas deberán comparecer ante el Comité para vista administrativa según lo establecido en la Regla 14 de este Reglamento;*

*f) advertirá al pensionado o beneficiario de su derecho a solicitar reconsideración de la determinación del Administrador, según lo establecido en el "Reglamento de Procedimiento Adjudicativo" de la Administración;*

*g) con la notificación se incluirán todos los formularios que sean necesarios para la tramitación de la tutela,*

*advirtiendo que durante la vista deberán presentarse todos los documentos debidamente cumplimentados."*

Analizada la controversia bajo el crisol doctrinario previamente esbozado, estamos en posición de resolver. Así lo hacemos.

### III

En el caso de marras, la parte recurrente arguye que la agencia recurrida erró al negarle la reinstalación de su pensión. Asimismo, alega que se cometió error al declarar nula la designación de su hermano como su tutor. En contrario, la Administración sostiene que esta parte no ha demostrado que su decisión fuera una arbitraria o errónea. Intimando, pues, que las acciones del propio recurrente en exceso de una década conllevaron que cesara la pensión. Veamos.

El tracto fáctico del caso ante nos, muestra que el recurrente en efecto estuvo desaparecido y en consecuencia dejó de recibir los cheques correspondientes a la pensión por incapacidad que le fuera aprobada. Inclusive, ante su ausencia, varios de ellos fueron devueltos al organismo administrativo por uno de sus hermanos. Además, la Administración intentó en varias ocasiones contactar al recurrente para auscultar su estado médico. No obstante, a pesar de los esfuerzos realizados, su gestión resultó infructuosa. Por ende, estando el recurrente desaparecido, y en incumplimiento con las referidas solicitudes, la Administración determinó cesar el desembolso de fondos por concepto de la pensión por incapacidad.

Conforme el derecho aplicable, la Administración, dentro de sus funciones, tenía la obligación de requerir al recurrente que se sometiera a una evaluación médica periódica. Ello, en aras de verificar el estado de la condición o condiciones por las cuales le fue aprobada la pensión en cuestión. Así lo establece de forma prístina el Art. 2-111 de la Ley Núm. 447, *supra*, cuando dispone en particular, que [....] el Administrador suspenderá los pagos de la anualidad si el participante rehusare someterse a examen médico [....]. Predicado en esto, el incumplimiento por parte del recurrente con lo anterior, sin duda validó la decisión administrativa aquí recurrida. La necesidad de que éste se sometiera a las evaluaciones periódicas era un requisito indispensable para poder verificar su estatus médico.

De igual forma, es menester señalar que a pesar de haber tenido amplia oportunidad para ello, el recurrente declinó ofrecer prueba documental ante la Junta. Asimismo, éste decidió no ofrecer su testimonio en las vistas administrativas que se realizaron, dejando así en el vacío las razones subyacentes en su desaparición por una década. La falta de prueba documental o testifical para sostener su petición de tutor y de reinstalación de pensión, ciertamente no contribuyó a que la agencia recurrida tuviera información concreta para validar sus alegaciones. Como corolario, resulta ineluctable concluir que en este caso en particular, la Administración actuó con diligencia y prestó la debida atención para con los intereses del recurrente.

Del expediente surgen las diversas comunicaciones que se enviaron al recurrente para poder auscultar su situación médica. De esta forma, se le brindó vasta oportunidad para que diera cumplimiento a las disposiciones de ley aplicables. Todo ello, con el fin de estar en posición de adjudicar si éste ameritaba continuar recibiendo la pensión, o si en cambio, su situación había mejorado. Sin embargo, la desaparición del recurrente –hasta este momento no fundamentada en ninguna de las etapas apelativas-, constituyó un claro ejemplo de dejadez para con sus intereses.

Como dijéramos, el Tribunal Supremo de Puerto Rico ha destacado, que aquella parte que impugne la evidencia en la que se basó la agencia para formular sus determinaciones de hechos, tendrá que *"demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración." Misión Ind. P.R. v. Junta de Planificación*, 146 D.P.R. 64 (1998), a la pág. 131. En atención a esta máxima, estamos compelidos a determinar que la parte aquí recurrente

no ha presentado documentos ni cualquier otra evidencia, que derroten las determinaciones según tomadas por la Junta, confirmando a la Administración. Nada existe en el expediente que menoscabe la determinación recurrida.

Además, precisa subrayar, que la aprobación de una pensión por incapacidad no ocupacional ha de responder a los más estrictos estándares en concordancia con lo expuesto por la Ley Núm. 447, *supra*. Ello, es un beneficio extraordinario que en nada desmerece los beneficios ordinarios que asisten a los participantes del sistema de retiro gubernamental. Por tanto, la determinación aquí recurrida no es óbice para que el recurrido pueda -de así interesarlo-, solicitar los beneficios de una pensión por años de servicio.

En tanto, y respecto a la designación de tutor que hiciera la Administración en el año 2000, estamos contestes con lo resuelto por la Junta. Del análisis al expediente de marras, se colige que la designación de tutor fue realizada de forma anómala. Como señaláramos, la Regla 7.1 del Reglamento, *supra*, reza en lo pertinente: *"[t]oda designación administrativa de tutor para un participante o un pensionado deberá estar precedida de una recomendación médica a tales efectos [....]"*. Lo anterior, implica que previo a cualquier determinación de tutoría es imprescindible que la Administración tenga ante sí prueba concluyente que le asista en su proceso de evaluación.

No obstante ello, del análisis al expediente ante nos se desprende que contrario a lo dispuesto por el Reglamento, *supra*, la designación de tutor aquí cuestionada careció de informe médico alguno que la sustentara. En la evaluación de la misma, la Junta no encontró que se haya presentado la evidencia médica o legal necesaria para sustentar la petición de tutor, esto es, ninguna prueba objetiva que detallara la razón por la cual era necesario nombrar un tutor en este caso en particular. Esta ausencia de evidencia, desembocó en una aprobación de tutelaje destemplada e irregular. Las circunstancias presentes en este proceso, se apartan sin duda del debido procedimiento contemplado por el Reglamento, *supra*, para la responsable designación de un tutor. Predicado en ello, la designación de tutor no puedo ser sostenida en derecho. No se cometió el error señalado.

**IV**

Por los fundamentos anteriormente expresados, se confirma la Resolución aquí recurrida.

Se ordena a la Secretaria del Tribunal que remita a la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura la copia certificada del expediente administrativo del caso de marras.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones