# 2008 DTA 106

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE SAN JUAN
### PANEL III

EX SGTO. ALBERTO BERMÚDEZ RIVERA, PLACA 8-15238
Recurrente

v.

POLICÍA DE PUERTO RICO
Recurrida

Núm. KLRA-2007-01139

San Juan, Puerto Rico, a 26 de agosto de 2008

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Morales Rodríguez

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, señor Alberto Bermúdez Rivera, nos solicita que revoquemos la resolución emitida el 28 de junio de 2007 por la Comisión de Investigación, Procesamiento y Apelación (CIPA). Mediante la misma, el foro administrativo confirmó la determinación del Superintendente de la Policía de Puerto Rico de expulsar al recurrente de dicho cuerpo.

Por los fundamentos que expondremos, se confirma la resolución recurrida.

### I

Según las determinaciones de hechos formuladas por la CIPA, la Policía de Puerto Rico realizó una investigación administrativa relacionada con la conducta del sargento Alberto Bermúdez Rivera (Sgto. Bermúdez) como oficial de la policía.

De la investigación realizada, surgió que el 11 de febrero de 2003, a eso de las 2:30 a.m., en la carretera 152, frente al *"car wash"* El Centro en el Barrio Cedro Arriba de Naranjito, los agentes Cynthia López Berríos #28705 y René González Santiago #16506 intervinieron con un vehículo Mitsubishi Montero por exceso de velocidad. El agente González tenía conocimiento de que los ocupantes del vehículo eran personas relacionadas con el trasiego de sustancias controladas en las Parcelas Medina de Corozal.

Los agentes solicitaron la presencia de su supervisor inmediato, Sgto. Bermúdez. Cuando éste se personó al lugar, recibió mediante radio información de que los ocupantes del vehículo estaban armados. Ante tales circunstancias, el Sgto. Bermúdez consultó por teléfono con el fiscal sobre la posibilidad de un registro. Éste le indicó que la intervención no justificaba un registro. Acto seguido, el Sgto. Bermúdez tuvo una conversación con los ocupantes del vehículo y uno de ellos le entregó un revólver marca S/W, calibre 357, serie CAF 5065, el cual le había sido hurtado al ex agente Jesús Loubriel Camerón #10504. Finalmente, los individuos se marcharon del lugar sin que se efectuara ningún arresto.

El Sgto. Bermúdez le entregó el arma al agente González y le ordenó a éste redactar un informe de incidente de hallazgo a sabiendas de su falsedad. El informe hizo constar que el arma de fuego se encontró al lado de unos zafacones del car wash. El Sgto. Bermúdez también dio instrucciones al agente González para que redactara otro informe, relacionado al mismo incidente, pero de arresto, en el cual se indicó que el día de los hechos se arrestó al señor Eugenio Rodríguez Ferrer por la portación ilegal del arma descrita en el informe anterior y que el mismo

fue dejado en libertad. El Sgto. Bermúdez firmó ambos informes.

Posteriormente, el Sgto. Bermúdez cursó un comunicado al teniente Oscar Morales Calderón #6-3074 mediante el cual admitió que permitió que los individuos se marcharan del lugar a cambio de que le entregaran el arma de fuego. De la investigación realizada, surgió que el Sgto. Bermúdez negoció con los individuos la entrega del arma y suscribió información falsa en informes oficiales con el propósito de resguardarse y justificar su proceder.

Como resultado de la referida investigación, el 12 de mayo de 2005, el Superintendente de la Policía suscribió la comunicación sobre intención de expulsión (Resolución de Cargos) que le fue notificada al Sgto. Bermúdez el 22 de mayo de 2005. En la misma se indicó que *"los hechos antes reseñados constituyen una violación al Artículo 14, Sección 14.5, Faltas Graves Número 1, 6, 7 y 27 del Reglamento de Personal de la Policía de Puerto Rico"*. **[1]**

El Sgto. Bermúdez solicitó la vista administrativa a la cual tenía derecho y la misma fue celebrada el 31 de enero de 2006. Finalmente, el 7 de marzo de 2006, el Superintendente de la Policía de Puerto Rico firmó la carta de *"EXPULSIÓN"* del Sgto. Bermúdez. **[2]**

Por no estar de acuerdo con la decisión del Superintendente, el 12 de mayo de 2006, el Sgto. Bermúdez apeló la misma ante la CIPA. Celebrada la vista administrativa, dicho organismo apelativo confirmó la expulsión del Sgto. Bermúdez. La CIPA determinó que el Sgto. Bermúdez cometió las cuatro faltas al Reglamento de Personal de la Policía de Puerto Rico que le fueron imputadas. Concluyó que éste llevó a cabo negociaciones por su cuenta con ciertos individuos y luego hizo constar información falsa en documentos oficiales de la Policía a los fines de justificar su proceder. Señaló que el Sgto. Bermúdez incumplió con los deberes primordiales de la Policía, tales como prevenir, descubrir, investigar y perseguir el delito. Además, resolvió que el Sgto. Bermúdez negoció *"una salida airosa para un delincuente, ordena la preparación de informes que sabía eran falsos porque él estuvo presente en la escena de los hechos y tranquilamente los suscribe..."*. **[3]** Resaltó que la falta mayor es el encubrimiento, mediante informes falsos, de una irregularidad. Destacó que de todo funcionario público, máxime un miembro de la Policía, se exige honradez y expresó que el Sgto. Bermúdez faltó a dicho valor. A esos efectos, determinó que el Sgto. Bermúdez laceró la confianza que el país deposita en sus instituciones gubernamentales y, a su vez, manchó la integridad de la Policía. En virtud de ello, concluyó que procedía la expulsión del Sgto. Bermúdez.

Inconforme, oportunamente, el Sgto. Bermúdez acudió ante nos y señaló que:

*"Erró la Comisión al apreciar la prueba tomada en su totalidad según consta en el récord.*

*Erró la Comisión al no sostener que la prueba era insuficiente en derecho para encontrar al recurrente incurso en responsabilidad por las faltas graves señaladas.*

*Erró la Comisión al determinar que la expulsión del recurrente se ajustó a derecho."*

Con el beneficio de los alegatos del recurrente y del Procurador General, y la transcripción de la prueba de la vista administrativa, pasamos a resolver.

## II

Las decisiones de los organismos administrativos merecen una gran consideración y deferencia por parte de los tribunales en vista de la experiencia y conocimiento especializado que poseen. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866 (1993). A tono con lo anterior, el ámbito de nuestra intervención se delimita por la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme

(LPAU), 3 L.P.R.A. sec. 2175, que establece en lo pertinente:

*"Las determinaciones de hechos de las decisiones administrativas serán sostenidas por el tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."*

Sabido es que la revisión judicial de las decisiones administrativas comprende tres aspectos: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho en todos sus aspectos. *Reyes Salcedo v. Policía de P. R.*, 143 D.P.R. 85, 93 (1997). La evidencia sustancial se define como aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70, 75 (2000); *Misión Ind. P.R. v. J.P*, 146 D.P.R. 64 (1998); *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670 (1953). El propósito de la regla de evidencia sustancial aplicable a las determinaciones de hechos es evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor. *P.C.M.E. v. J.C.A.*, 166 D.P.R. ____ (2005), **2006 J.T.S. 7**; *Reyes Salcedo v. Policía de P.R., supra.*

A diferencia de las determinaciones de hechos, las conclusiones de derecho de la agencia pueden ser revisadas en todos sus aspectos por el tribunal. 3 L.P.R.A. sec. 2175. Esto no significa que los tribunales puedan descartar liberalmente las conclusiones de derecho de una agencia administrativa. *P.R.T.C v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000). Por el contrario, los tribunales deben brindar deferencia a las interpretaciones que las agencias administrativas efectúan con relación a la ley cuya administración le fue encomendada por la legislatura, ya que en esos casos se presume que la agencia posee un conocimiento especializado en aquellos asuntos que le fueron encomendados. *Reyes Salcedo v. Policía de P.R., supra.* Ha expresado nuestro Tribunal Supremo que dicha deferencia descansa en que los organismos administrativos *"cuentan con una basta experiencia y conocimiento (expertise) en relación con la materia con la que bregan día tras día"*. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 436 (1997); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183 (1984).

A la luz de estos preceptos, nuestro Tribunal Supremo ha establecido que la revisión judicial está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o, si por el contrario, fue irrazonable, ilegal o medió abuso de discreción. *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116 (2000); *Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993). De ahí que este tribunal se limitará a indagar sobre la razonabilidad de la decisión del foro administrativo sin sustituirla por su propio criterio, salvo que se infrinjan valores constitucionales fundamentales o se trate de actuaciones claramente arbitrarias. *Rivera Concepción v. A.R. P.E., supra*; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993). De existir más de una interpretación razonable de los hechos, los tribunales, de ordinario, deben sostener la selección de la agencia. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra.* Esto es así, porque las determinaciones de hechos de una agencia no pueden modificarse si existe una base racional en la prueba para las mismas. *López v. Junta Planificación*, 80 D. P.R. 646 (1958).

El criterio a aplicarse no es si la decisión administrativa es la única razonable, la más razonable o la mejor al arbitrio del foro judicial; es si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable. *Martínez v. Rosado,* 165 D.P.R. ____ (2005), **2005 J.T.S. 132**; *Rivera Concepción v. A.R.P.E., supra*; *De Jesús v. Depto. Servicios Sociales*, 123 D.P.R. 407 (1989).

Cónsono con el principio de deferencia, existe una presunción de regularidad y corrección a favor de las decisiones administrativas, *Rivera Concepción v. A.R.P.E., supra*; *Catalytic Ind. Maint. Co. v. F.S.E.*, 121 D.P.R. 98 (1988). Por tanto, para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre

claramente que la decisión del organismo administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *P.C.M.E. v. J.C.A., supra*; *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387 (1999); *Misión Ind. P.R. v. J.P., supra*. Exigir tal demostración inicial tiene el propósito de evitar que la parte afectada impugne las determinaciones de hechos con meras alegaciones. *Ramírez v. Depto. de Salud*, 147 D.P.R. 901 (1999). Si en la solicitud de revisión, la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben ser sostenidas por el tribunal revisor. *Domínguez v. Caguas Expressway Motors, supra*; *Ramírez v. Depto. de Salud, supra*.

No obstante, la deferencia reconocida no equivale a la renuncia de la función revisora del tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Reyes Salcedo v. Policía de P.R., supra*; *Rodríguez v. Comisión Industrial*, 99 D.P.R. 368 (1970). Es nuestra obligación respetar la apreciación de la agencia en cuanto a la credibilidad de testigos. *Hilton Hotels v. Junta Salario Mínimo, supra*. No debemos perder de vista que la determinación en cuanto al testimonio y la deducción de hechos establecidos en la vista le corresponde al organismo adjudicador. Por ello, este tribunal no debe pasar sobre la credibilidad del testigo o repesar la evidencia, sino que se limitará a tomar el récord en su totalidad, para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. *J.R.T. v. Línea Suprema, Inc.*, 89 D.P.R. 840 (1964). Las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y la revisión judicial se limita a determinar si la agencia actuó arbitraria, caprichosa, irrazonablemente o si abusó de su discreción. *Morales González v. J.R.T.*, 121 D.P.R. 249 (1988).

## III

Por estar íntimamente relacionados, discutiremos en conjunto los errores señalados por el Sgto. Bermúdez. De acuerdo con dichos planteamientos, lo que debe determinar este Tribunal es si, conforme a la prueba presentada en la vista administrativa, la CIPA actuó correctamente al confirmar la determinación del Superintendente de la Policía de expulsar de su puesto al Sgto. Bermúdez o si, en contrario, abusó de su discreción, y actuó arbitraria, caprichosa e irrazonablemente. Veamos.

El Superintendente le formuló al Sgto. Bermúdez, en la *Resolución de Cargos* de 12 de mayo de 2005, violación al Artículo 14, Sección 14.5 del Reglamento de Personal de la Policía de Puerto Rico en sus faltas graves 1, 6, 7 y 27, las cuales disponen:

*"Falta Grave Número 1 – Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.*

*Falta Grave Número 6 – Alterar, modificar, retirar o dejar de presentar cualquier denuncia o acusación sin la debida autorización.*

*Falta Grave Número 7 – Redactar o someter cualquier informe oficial o suplir información para la redacción de éste, a sabiendas de que toda o parte de la misma es falsa.*

*Falta Grave Número 27 - Observar una conducta lesiva, inmoral o desordenada, en detrimento del Cuerpo de la Policía."*

En su escrito, el Sgto. Bermúdez alega que éste incautó *"correctamente"* un arma de fuego durante la intervención, tras alegar que *"se pensaba que la situación había sido controlada entonces surge la querella contra el recurrente sin importar que todos los que trataban de forzar la entrega del arma de fuego por parte de sus poseedores, ninguno tuvo éxito alguno. Por lo que el error en la apreciación de la prueba se cometió y amerita la revocación de la Resolución"*. **[4]** Aduce que no surge del récord administrativo evidencia suficiente que demuestre que él incurriera *"en las faltas graves, sino que quedó establecido que se siguió todo el protocolo*

*de cadena de custodia sobre el almacenamiento y cuidado de la evidencia"*. **[5]**

No obstante, de la transcripción de la prueba oral sometida no surge que los agentes que intervinieron en el incidente hicieran un intento de que se le entregara un arma de fuego al momento de la detención del vehículo. El agente González testificó lo siguiente en relación con el incidente:

*"Ese día ...yo me encontraba realizando labores de patrullaje e investigación junto a la compañera Cyndia López, ...cuando me llama la atención ...un vehículo que ...pasa a alta velocidad por allí, ... una Mitsubishi Montero... El vehículo ya era, eh, anteriormente yo lo había, ya lo había visto y lo reconocía, unas personas ... conocidas por mí, este eran unos, unas personas residentes de Corozal. Eh la Montero eh, en base a unas investigaciones que anteriormente yo había eh pertenecía a un señor conocido como Danny el dueño de un punto de drogas... Eh como el vehículo iba a alta velocidad ... pues ... me di la tarea de intervenir con el individuo, o las personas que andaban en el vehículo porque el vehículo tenía tintes, ...tiré la tablilla del vehículo, escuché, si mi mente no me falla, ...cuando yo pasé la información menciona de que ese vehículo creo que el día antes estuvo envuelto en un tiroteo... El vehículo le doy seguimiento hasta que se detiene ... una vez se detiene allí ... le digo a la compañera que se baje del vehículo que tome una posición en dirección hacia el vehículo con su arma de reglamento para, para que me dé este eh "support", o esté pendiente a cualquier situación que pueda surgir... Yo me acerco al vehículo... le solicito los documentos al chofer, eh a quien reconocía por el apodo de "Tortillita". Esa persona hoy en día se encuentra muerto, ya que era una persona que era del bajo mundo y por problemas posteriores, pues, murió a consecuencia de unos disparos ...esta persona, pues, me entrega los documentos, licencia y registración ... le solicité que se bajaran del vehículo. Para cuestión de mi seguridad ... las personas se negaron a bajarse del vehículo. Allí, en medio de la intervención llegó el supervisor, el sargento Bermúdez ... como los tipos se pusieron reacios a mí, pues, el supervisor de turno, que era el Sargento, eh toma las riendas de la intervención para poder dialogar con las personas ..."*. (Citas Omitidas). **[6]**

La naturaleza de la intervención fue confirmada por la agente López, quien detalló lo que ocurrió una vez se detuvo al vehículo en cuestión:

*"El compañero René se baja de la unidad. Yo me ... quedé dándole "back up" a él. El Sargento también llegó al lugar ... entonces luego el compañero le pidió los documentos al conductor ... del vehículo. Desconozco quién era ... luego este el Sargento también entró en conversación ... Al rato, el Sargento regresa donde mí ... y me pide mi teléfono celular para hacer una llamada. El indica para llamar a un fiscal. Yo ... se lo presté. El ... se fue del lado mío a realizar la llamada."* (Citas omitidas) **[7]**

Lo anterior demuestra que el Sgto. Bermúdez acudió a la intervención después de que el vehículo fuera detenido y fue él quien entró en diálogo con los ocupantes del mismo. Ninguno de los agentes que se encontraba en el lugar de los hechos indicó en su testimonio que trataran de forzar a los ocupantes del vehículo a entregar un arma de fuego. De los testimonios de los agentes se desprende que éstos no tuvieron participación en torno a la posibilidad de un registro e incautación de un arma de fuego.

De otra parte, durante la vista administrativa también quedó evidenciada la falsedad del contenido de los informes. En este sentido, desfiló prueba de que a pesar de que se le entregó al Sgto. Bermúdez el arma de fuego luego de la negociación, en el primer informe de hallazgo indica que éste encontró el arma al lado de unos zafacones. En relación con ello, el agente González indicó que debido a que se movió del lugar de los hechos no tuvo conocimiento personal sobre cómo se ocupó el arma y su procedencia. **[8]** No obstante, detalló que luego de que el Sgto. Bermúdez le entregara el arma de fuego, éste le dio *"unas instrucciones para que confeccione un informe"*. **[9]** Indicó que en el acápite intitulado *"Relato"* incluido en dicho informe se explicó que *"en fecha, hora y lugar mencionado fue localizada el arma antes descrita, al la'o de unos zafacones. Esta arma será entregada para los fines correspondientes"*. **[10]** Expresó el agente González que a pesar de que no estuvo presente cuando se ocupó el arma de fuego, el Sgto. Bermúdez le indicó que había que incluirlo en el informe.

**[11]**

A tono con lo anterior, el Tnte. Morales testificó que el Sgto. Bermúdez suscribió un informe inicial de hallazgo y posteriormente hizo un informe de arresto. **[12]** En cuanto al informe de hallazgo, indicó que el mismo constituía un narrativo que particularizaba que el arma de fuego se encontró cerca de un zafacón. **[13]**

Igualmente, el Sgto. Bermúdez ordenó al agente González suscribir otro informe que contenía la siguiente información: *"se arrestó al señor Eugenio Rodríguez Ferrer por la portación ilegal de un arma porque en fecha, hora y lugar mencionado éste portaba ilegalmente un arma, el arma descrita. El imputado fue dejado en libertad ... ya que la intervención fue interpretada por el Fiscal Aldrich, quien informó que los motivos fundados no daban base para la radicación de cargos. El arma fue ocupada y dejada en el Cuarto de Evidencia"*. **[14]** Al cuestionársele sobre la fecha en que realizó el informe, especificó que *"se puso la misma fecha, pero no fue el mismo día"*. **[15]** Asimismo, el agente González manifestó que a diferencia del informe de hallazgo, el informe de arresto pormenorizó que se ocupó un arma de fuego producto de un arresto. **[16]** No obstante, a pesar de tales informes, el Sgto. Bermúdez le comunicó al Tnte. Morales que los ocupantes del vehículo entregaron el arma de fuego libre y voluntariamente. **[17]**

En vista de lo anterior, nos vemos compelidos a conferirle deferencia a las determinaciones de la CIPA, puesto que el Sgto. Bermúdez falló en señalarnos qué otra prueba obra en el récord que razonablemente reduzca el peso de la evidencia presentada por la Policía en el caso ante nos.

Sabido es que este tribunal le debe deferencia a las determinaciones de la CIPA que envuelven la credibilidad de algún testigo. Ello, porque es dicho foro el que está en mejor posición para observar, escuchar y apreciar las declaraciones del mismo. Así, en este Foro no estamos facultados para sustituir el criterio de la CIPA de conferirle credibilidad a los testimonios con nuestra propia apreciación de la prueba obrante en autos. Por ende, resolvemos que existe evidencia sustancial en el récord administrativo que sostiene que el Sgto. Bermúdez incurrió en negligencia en el desempeño de sus deberes al alterar una denuncia sin la debida autorización y someter un informe oficial a sabiendas de que la información suplida era falsa, así como en conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía. Artículo 14, Sección 14.5 del Reglamento de Personal en sus faltas graves 1, 6, 7 y 27.

Resta discutir la razonabilidad de la sanción impuesta al Sgto. Bermúdez.

La Policía aprobó su Reglamento de Personal, Núm. 4216, de 11 de mayo de 1990, con el propósito de propiciar el desempeño eficiente de las funciones asignadas a dicho cuerpo. Dicho reglamento contiene además las reglas que rigen a la Policía, promulgadas por el Superintendente, que establecen la conducta que deben observar sus miembros y también particularizan aquélla que se desvía de sus deberes, funciones y responsabilidades. *Reyes Salcedo v. Policía de P.R., supra.* En su Artículo 14 sección 3, el Reglamento de Personal dispone las medidas correctivas que el Superintendente de la Policía puede imponer a cualquier miembro de la Policía que incurra en alguna falta grave. Éstas son: la expulsión permanente del Cuerpo y la degradación o suspensión del Cuerpo, sin sueldo, por un período no mayor de cinco (5) meses.

En el caso ante nos, vimos que el Superintendente de la Policía le impuso a la Sgto. Bermúdez la sanción de expulsión permanente del Cuerpo por la comisión de cuatro faltas graves. Nuestro análisis de la prueba obrante en el expediente administrativo nos lleva a determinar que la sanción impuesta está fundamentada en la totalidad del expediente administrativo.

Siendo lo anterior un asunto que envuelve la credibilidad de los testigos y estando la CIPA en mejor posición para observar, escuchar y apreciar las declaraciones de éstos, concedemos deferencia a sus determinaciones. El Sgto. Bermúdez falló en rebatir la presunción de corrección y la deferencia que cobija a toda decisión

administrativa. Éste no señala en su recurso qué otra prueba consta en el récord administrativo que razonablemente demuestre que la decisión de la Policía fue arbitraria o contraria a derecho. Por tal razón, concluimos que existe evidencia sustancial en el récord administrativo que sostiene la expulsión del Sgto. Bermúdez de la Policía de Puerto Rico. No se cometieron los errores señalados.

## IV

Por los fundamentos que anteceden, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 106

1. Página 9 del apéndice del recurso.

2. Notificada al Sgto. Bermúdez el 26 de abril de 2006.

3. Página 4 del apéndice del recurso.

4. Página 3 del escrito de revisión administrativa.

5. Página 5 del escrito de revisión administrativa.

6. Páginas 42-49 de la transcripción de la vista administrativa.

7. Páginas 142-145 de la transcripción de la vista administrativa.

8. Páginas 96-97 de la transcripción de la vista administrativa.

9. Página 60 de la transcripción de la vista administrativa.

10. Página 64 de la transcripción de la vista administrativa.

11. Página 66 de la transcripción de la vista administrativa.

12. Página 19 de la transcripción de la vista administrativa.

13. Página 34 de la transcripción de la vista administrativa.

14. Página 68 de la transcripcion de la vista administrativa.

15. Página 70 de la transcripcion de la vista administrativa.

16. Página 99 de la transcripcion de la vista administrativa.

17. Páginas 22, 30 y 36 de la transcripción de la vista administrativa.